Argued June 17, affirmed July 23, 1970

STATE OF OREGON, *Respondent, v.*
ROY LEE SPICER, *Appellant.* C-52465
473 P2d 147

*J. Raymond Carskadon,* Portland, argued the cause and filed the brief for appellant.

*Jacob B. Tanzer,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant was convicted of the crime of illegal possession of narcotics. He appeals, asserting errors in connection with the denial of his motion to suppress and certain procedures in connection with the hearing thereof.

The affidavit for the search warrant states:

"That I am a police officer of the City of Portland Bureau of Police, assigned to the Narcotics Detail;

"That I am advised by a confidential reliable informant—known by me to be reliable because my informant has supplied me with information in the past leading to the seizure of contraband narcotics and the arrest and conviction of narcotics law violators—that one Roy Lee Spicer, who resides at 2157 N.E. 7th, Portland, Oregon, has possessed and made sales of narcotics to my informant and to others in the presence of my informant on the said premises during the past 5 months, and that my informant has seen quantities of heroin and cocaine on the said premises within the past two weeks;

"That the said premises at 2157 N.E. 7th, Portland, Oregon, are more particularly described as follows:

"A one-story wood frame and brick dwelling house;

"That based upon the aforesaid information, I have reasonable cause to believe and do believe that there is present on the said premises and on the person of the said Roy Lee Spicer quantities of heroin and cocaine, which are contraband; and I further depose and say that I have good reasons to believe the above mentioned and described property

is concealed on the person of the said Roy Lee Spicer and on the premises above described * * *."

Defendant contends that the affidavit was insufficient to justify the issuance of the search warrant. He relies in part on *State v. Ingram*, 251 Or 324, 445 P2d 503 (1968). In that case the Supreme Court held an affidavit insufficient to support the issuance of a search warrant, stating:

"* * * Our decision is based upon the conclusion that the length of time that elapsed between the obtaining of the heroin and the making of the affidavit is too great to permit the magistrate to find that probable cause existed that narcotics were on the premises on the date of the affidavit.

"No permissible or reasonable time lapse can be specified. Whether the lapse of time is deemed to have been so long that it reasonably cannot be inferred that contraband is present at the premises will depend upon all the circumstances. * * *" 251 Or at 327.

More recently, by coincidence in a case also entitled *State v. Roy Lee Spicer*, 234 Or 68, 456 P2d 965 (1969), the Supreme Court considered an affidavit for a search warrant issued two years before this one for narcotics in defendant's home. It discussed its holding in *Ingram* as follows:

"In *State v. Ingram*, 251 Or 324, 445 P2d 503, we held that a single purchase of Heroin made on January 9, 1967, standing alone was not sufficient to support a reasonable conclusion that there was Heroin on the premises on February 8th, a lapse of almost a month.

"In the matter before us, the affidavit discloses that the informer, whose reliability was tested, stated he had made several purchases of marijuana over quite a long period of time from the defendant at the same place where he purchased for the of-

ficer. This, it would seem, would impress a reasonable mind with the thought that the possession of marijuana at the defendant's home was a continuing business enterprise and, in the absence of some fact that would disclose otherwise, the affidavit should be sustained. '* * * [A]ffidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion.' *United States v. Ventresca,* supra, 380 US 102, 108." 254 Or at 71-72.

In the present case the affidavit was made by a police officer based upon statements made to him by a confidential informant previously known by him to be reliable, specifically in connection with narcotics matters. It further recites facts clearly leading a reasonable man to believe that the possession and sale of narcotics by the defendant at the described residence was "a continuing business enterprise," and that the narcotics cocaine and heroin, which had been seen in quantity by the informant there "within the past two weeks," were a part of that continuing business enterprise—a highly relevant aspect of the " 'underlying circumstances' " referred to in *Spinelli v. United States*, 393 US 410, 413, 89 S Ct 584, 21 L Ed 2d 637 (1960), "necessary to enable the magistrate independently to judge of the validity of the informant's conclusion that the narcotics were where he [affiant] said they were."

In *State v. Evans,* 1 Or App 489, 463 P2d 378 Supreme Ct *review denied* (1970), this court held valid a warrant based on an affidavit in which the informant swore he had seen the narcotics in substantial quantities "within the past week."

■ We think the affidavit here was itself sufficient to support the issuance of the warrant.

■ The defendant next contends that the magistrate, who did not testify here at all, may have relied on an unsworn oral statement made to him by the officer to the further effect that the same informant had purchased some narcotics there from the defendant the very day the warrant was secured. He relies on *State v. Dinney,* 1 Or App 473, 462 P2d 698 (1969) Supreme Ct *review denied.* That case holds that a magistrate cannot rely upon unsworn statements made to him by police officers to supplement an affidavit which by itself fails to establish probable cause. Here, however, we have held the sworn affidavit itself, without more, was sufficient to establish probable cause. We have no way of knowing upon what the magistrate, who was not called as a witness, relied in issuing the warrant. We assume in the absence of evidence to the contrary that he relied only upon sworn statements, as the Fourth Amendment requires. ORS 41.360 (16) ; *State v. Ellison,* 209 Or 672, 307 P2d 1050 (1957).

In the course of the search the officers in addition to the heroin and cocaine described in the warrant seized other articles which defendant concedes might have been used in the preparation and ingestion of marihuana.

■ In *State v. Muetzel,* 121 Or 561, 254 P 1010 (1927), the court said:

"* * * The law is properly stated by the federal court in *United States v. Camarota,* 278 Fed. 388, where it is written:

" 'The officer, having entered upon the premises without having committed a trespass, and thus being lawfully there, and seeing a crime being committed, had a perfect right, and it was his plain duty, to seize the articles which were being used in committing the crime. In making such seizure, the

officer could not do so by virtue of the search-warrant, but in the performance of his general duty to prevent the commission of crime.'

"* * * * *.

"So, while it is a general rule that the officer, in executing a search-warrant, had no right to seize any property by virtue of such warrant other than that described therein, this does not affect his duty, if lawfully upon the premises, to seize property that he discovers by his own senses is being then and there used as an instrumentality in the commission of a crime. * * *" 121 Or at 564-65.

Defendant claims that the seized paraphernalia was not then and there being used in the commission of a crime and so was exempt from seizure. When the police are lawfully present on premises pursuant to a warrant to seize certain described narcotics, and, while there, lawfully locate other narcotics or paraphernalia commonly used in connection with any narcotic, there is probable cause to believe that a crime is being or has been committed and such items are properly subject to seizure as evidence in connection therewith.

In *Abel v. United States*, 362 US 217, 80 S Ct 683, 4 L Ed 2d 668 (1960), the Supreme Court said at 238:

"* * * When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for. * * *"

Defendant next contends that in executing the warrant the police violated the knock and announce rule. This rule is described in *State v. Cortman*, 251 Or 566, 446 P2d 681 (1968), cert den 394 US 951

(1969), and in *State v. Olson,* 1 Or App 380, 462 P2d 681 (1969).

There was substantial evidence from which the trial court could have found, as it did, that the police complied with that rule. It established that one of the executing officers knocked loudly on defendant's front door. There was no response. After a few moments he knocked again. A male voice within asked, "Who is there?" The officer said that they were police officers and to open the door. The voice said, "Wait a minute." The officer then knocked loudly again and stated that he was a police officer with a search warrant and to open the door. The male voice responded again, saying, "Wait a minute." This time the voice sounded as if it were further away, that is, retreating from the door. The officer then broke in.

■ We think furthermore that the ease of destruction of narcotics and the likelihood that one trafficking illegally therein would seek to do so, not to mention the possible danger to officers, were indeed exigent circumstances. The assignment is without merit.

The fifth assignment challenges a ruling whereby in the course of the motion to suppress, the court both allowed and in effect required the production by the state of further evidence after the state had rested and the defendant had gone forward with his evidence.

ORS 17.215 provides that in the trial of a case:

> "The order of proof shall be regulated by the sound discretion of the court. Ordinarily, the party beginning the case shall exhaust his evidence before the other begins."

■ Certainly if in the trial itself the court may regulate the order of proof, it has at least an equal

right to do so when hearing a preliminary motion. Defendant points to nothing in the court's ruling which resembles an abuse of its sound discretion. Neither justice nor its administration is a game. Nor is the judge just an umpire. Rather, the judicial process is that procedure within an ordered society through which its previously expressed will is first determined and then imposed. In deciding a factual issue in an individual case, its highest purpose is to seek the truth within the established rules. The exercise of "sound discretion" vested by the statute in the trial judge must be evaluated in substantial part against that purpose. So measured, defendant points to nothing which would remotely indicate an abuse of discretion.

As a part of this contention, defendant in his brief asserts:

> "The Courts' duties [sic] is to be impartial and rule only on points of law and allow the attorneys to try their cases without the courts' assistance."

He cites as his sole authority ORS 136.310, which provides:

> "All questions of law, including the admissibility of testimony, *the facts preliminary to such admission* and the construction of statutes and other writings and other rules of evidence shall be decided by the court. * * *" (Emphasis supplied.)

The statute thus in fact imposes upon the judge the duty to determine all facts preliminary to, as well as the admissibility of, all testimony.

■■ Assuming, as does the defendant, but without deciding, that the court has neither right nor duty to assist the attorneys in the trial of their cases,[1] the

---

[1] For a contrary implication, see Anders v. California, 386 US 738, 87 S Ct 1396, 18 L Ed 2d 493 (1967).

converse does not follow. It is indeed the duty of the attorneys to assist the court in the entire course of a case. When in the discharge of its responsibilities the court finds it reasonably necessary to direct the production of evidence not offered by one of the parties or to question a witness, it has both the right and, upon occasion, the duty to do so.

The defendant points to no specific alleged abuse of its discretion by the court, as required by Rule 19. We find no merit in this assignment.

The judgment is affirmed.